UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| MICHAEL JW POTTER, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 2:20-CV-00120-JRG-CRW |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner Michael JW Potter's Motion Requesting Statements from Law Enforcement [Doc. 13], the United States' Response [Doc. 15], and Mr. Potter's Reply [Doc. 16]. For the reasons herein, the Court will deny Mr. Potter's motion.

### I. BACKGROUND

In 2017, the United States charged Mr. Potter with conspiring to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846. [Indictment, Doc. 3, at 1, No. 2:17-CR-00012-3-JRG-CRW]. A petit jury later found him guilty of this charge. [Verdict Form, Doc. 575, at 1–2, No. 2:17-CR-00012-3-JRG-CRW]. With a total offense level of thirty-eight and a criminal history category of VI, Mr. Potter—who had seven prior drug offenses—had a guidelines range of life imprisonment, [PSR, Doc. 42, ¶¶ 68–69, No. 2:17-CR-00012-3-JRG-CRW; Statement of Reasons, Doc. 894, at 1, No. 2:17-CR-00012-3-JRG-CRW], and the Court sentenced him to life imprisonment, [J., Doc. 114, at 2, No. 2:17-CR-00012-3-JRG-CRW]. He appealed his conviction and sentence on several grounds, and the Sixth Circuit, in rejecting his appeal, recited the facts of his case as follows:

> On appeal, Potter challenges his conviction and sentence. As for his conviction, he argues that the police elicited his statements after he invoked his

right to an attorney under Miranda v. Arizona, 384 U.S. 436 (1966), and so violated the bright-line rule to stop questioning adopted by *Edwards v. Arizona*, 451 U.S. 477 (1981). As for his sentence, he argues that the Eighth Amendment bars his mandatory term of life because the child-focused logic of *Miller v. Alabama*, 567 U.S. 460 (2012), should expand to cover adults who commit nonviolent offenses. We disagree with Potter on both fronts, reject his remaining arguments, and affirm his conviction and sentence.

I.

In early 2015, Potter struck a deal with an acquaintance, Tammy Goodson, to make money by selling methamphetamine in east Tennessee. Goodson would introduce Potter to Nathan Hogan, a Georgia meth supplier, and Potter would reciprocate by giving her a certain amount of money and meth for each ounce he bought from Hogan. In the first half of 2015, Potter and Goodson twice drove to Georgia to buy between eight and ten ounces of meth from Hogan (or his runner). After Goodson's arrest, Potter made a third trip during which he bought 20 ounces from Hogan. Upon each return to Tennessee, Potter went about selling the drugs. About this time, for example, Brandin Hyde contacted Potter in search of a new supplier. Potter offered Hyde an eventual price discount to undercut Potter's "competition" if Hyde brought repeat business his way. Yet Potter and Hyde completed just one transaction.

That is because, on June 26, 2015, police arrested Potter on unrelated charges. That night, he told police he did not want to talk. The next day, he changed his mind. After signing a Miranda waiver, he spoke with Agents Jason Roark and Shannon Russell from the Tennessee Second Judicial District Drug Task Force. During this interrogation, Potter admitted that, starting in August 2014, he had bought about ten pounds of methamphetamine from a different Georgia supplier (not Hogan) and sold it in east Tennessee.

Shortly after his arrest, Potter asked his younger brother, Steven Hilliard, to collect debts from people who owed him. Hilliard recouped funds from several people, including $4,700 from a person who owed Potter for meth purchases. At Potter's urging, Hilliard also contacted Hogan to give him a heads up that Potter had been arrested. That call provided the spark that eventually led Hilliard to take his brother's place in the distribution scheme. During the second half of 2015, Hilliard traveled to Georgia to buy methamphetamine from Hogan using the money he had collected for Potter. Potter was initially upset upon learning of this arrangement, but the brothers ultimately agreed that Hilliard would reimburse Potter in full and pay Potter a "couple of hundred dollars" for each visit to see Hogan. Hilliard bought a pound or two of meth on each trip.

Potter remained in custody during this time, but renewed his distribution efforts soon after his October 2016 release. He contacted Hogan via Facebook, leading to a four-ounce meth purchase. He later bought eight ounces from Hogan. In February 2017, Hogan had arranged to meet Potter for another exchange, but police arrested Hogan on the day of the deal. Potter still completed the transaction through Hogan's runner. Their transactions ended shortly thereafter. The United States indicted Potter and twenty-four others—including Hogan, Goodson, and

2

Hilliard—for a conspiracy starting on or around January 2015 to distribute fifty grams or more of methamphetamine.

[Sixth Circuit Op., Doc. 947, at 1–4, No. 2:17-CR-00012-3-JRG-CRW]. Mr. Potter, having failed to capitalize on his appeal, has now moved for relief under 28 U.S.C. § 2255, alleging numerous claims of ineffective assistance of counsel and one claim that the Court applied an incorrect guidelines range at sentencing. In pursuing § 2255 relief, he also requests discovery, namely certain "statements given to law enforcement." [Pet'r's Mot. at 1]. The United States opposes his request. Having carefully reviewed Mr. Potter's discovery request and the parties' arguments, the Court is now prepared to rule on Mr. Potter's motion for discovery.

## II.  STANDARD OF REVIEW

"Rule 6 of the Rules Governing . . . § 2255 Proceedings for United States District Court governs discovery in § 2255 Proceedings." *Ervin v. United States*, 2013 WL 12409717, 2013 WL 12409717, Case Nos. 1:09 CV 12371:05 CR 245, at *13 (N.D. Ohio June 5, 2013). Rule 6 states:

> (a) Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A.
>
> (b) Requesting Discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.
>
> (c) Deposition Expenses. If the respondent is granted leave to take a deposition, the judge may require the respondent to pay the travel expenses, subsistence expenses, and fees of the petitioner's attorney to attend the deposition.

Rule 6's plain language requires a petitioner to show "good cause" before he is entitled to conduct discovery. R. 6(a), Rules Governing § 2255 Proceedings; *see Bracy v. Gramley*, 520

3

U.S. 899, 904 (1997) ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."). Good cause exists "only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy*, 520 U.S. at 908–09).

III. ANALYSIS

Mr. Potter "request[s] all the statements given to law enforcement by Wendell Huskins and Richard Alan Davis," [Pet'r's Mot. at 1], two defendants who, in a separate case, were previously convicted in this Court for drug offenses involving methamphetamine. According to Mr. Potter, the ultimate upshot of these statements is that they will establish he never purchased methamphetamine from Mr. Davis, [Pet'r's Mot. at 4; Pet'r's Reply at 2]—which would refute the testimony of Agent Shannon Russell, who, at trial, testified that Mr. Davis was a supplier to Mr. Potter, *see* [Trial Tr., Doc. 859, at 140:11–13]. In response, the United States asserts that Mr. Potter has failed to show good cause for the law-enforcement statements because they are not relevant to his pending motion under § 2255, [United States' Resp. at 2], in which, again, he raises claims of ineffective assistance of counsel and a claim contesting the accuracy of his guidelines range.

The Court agrees that the law-enforcement statements that Mr. Potter requests have no meaningful connection to his claims of ineffective assistance of counsel or his claim that his guidelines range was incorrect. Mr. Potter, ostensibly, requests these statements so that he can contest the sufficiency of the evidence from trial, *see* [Pet'r's Mot. at 4 (arguing that he "never purchased methamphetamine from Davis")], but the Sixth Circuit has "repeatedly held that the sufficiency of the evidence to support a conviction may not be collaterally reviewed on a

4

Section 2255 proceeding," *United States v. Osborn*, 415 F.2d 1021, 1024 (6th Cir. 1969) (citation omitted); *see United States v. Shields*, 291 F.2d 798, 799 (6th Cir. 1961) ("A Section 2255 proceeding cannot be used as a substitute for an appeal. The sufficiency of the evidence to prove the alleged offenses will not be reviewed in such a proceeding." (citations omitted)); *Mitchell v. United States*, Nos. 2:05-CV-274, 2:04-CR-02, 2007 WL 325762, at *3 (E.D. Tenn. Jan. 31, 2007) ("Section 2255 cannot be used to attack the sufficiency of the evidence by which a defendant is convicted, as that is an issue that can be raised only by direct appeal." (citing *Stephan v. United States*, 496 F.2d 527, 528–29 (6th Cir. 1974))). Mr. Potter is therefore without good cause to obtain the law-enforcement statements in question because they would not avail him in "demonstrat[ing] that he is . . . entitled to relief." *Williams*, 380 F.3d at 974.

Even if Mr. Potter could challenge the sufficiency of the evidence through the law-enforcement statements in question, the record evidence at trial still would have been sufficient to sustain his conviction. As the Sixth Circuit acknowledged when it rejected his appeal, the evidence at trial showed:

- "In the first half of 2015, Potter and Goodson twice drove to Georgia to buy between eight and ten ounces of meth from Hogan (or his runner)."

- "During the second half of 2015, Hilliard traveled to Georgia to buy methamphetamine from Hogan using the money he had collected for Potter," and "Hilliard would reimburse Potter in full and pay Potter a 'couple of hundred dollars' for each visit to see Hogan."

- "Potter remained in custody during this time, but renewed his distribution efforts soon after his October 2016 release. He contacted Hogan via Facebook, leading to a four-ounce meth purchase. He later bought eight ounces from Hogan. In February 2017, Hogan had arranged to meet Potter for another exchange, but police arrested Hogan on the day of the deal."

[Sixth Circuit Op. at 2–3]. The jury was free to believe, and to draw any reasonable inferences from, all this evidence, which undermines any contention that Mr. Potter would be entitled to

relief under § 2255 if he had leave to develop the facts more fully by obtaining the statements in question. *See United States v. Johnson*, No. 97-2164, 1999 WL 357826, at *1 (6th Cir. May 26, 1999) ("[The defendant] complains that all of [the government's witnesses'] testimony was self-serving, incredible and otherwise unreliable. Whatever its weaknesses, however, this testimony is evidence pointing to guilt."). In other words, the evidence was strong enough to sustain a conviction of Mr. Potter even if he had presented statements showing that he never bought methamphetamine specifically from Mr. Davis. He ignores the ample evidence showing that he purchased methamphetamine, or arranged for Mr. Hilliard to purchase it, from Mr. Hogan. *See* [Sixth Circuit Op. at 2–3]. He is therefore not entitled to discovery in support of his claims.

## IV. Conclusion

In moving for discovery, Mr. Potter fails to meet his burden of establishing that, with the benefit of a fully developed record, he may be entitled to relief under his claims. His Motion Requesting Statements from Law Enforcement [Doc. 13] is therefore **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
